THOMAS J. WARWICK, JR.
State Bar No. 56200
GRIMES & WARWICK
101 West Broadway, Suite 810
San Diego, CA 92101
Telephone: (619) 232-0600
E-Mail: twarwick@grimesandwarwick.com

Attorney for Defendant
Bruce Baker

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(HONORABLE CYNTHIA A. BASHANT)

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20CR1912-BAS |
| Plaintiff, | |
| v. | **DEFENDANT'S SENTENCING MEMORANDUM** |
| BRUCE BAKER, | |
| Defendant. | Date:   June 7, 2021<br>Time:   9:00 a.m. |

TO:   RANDY S. GROSSMAN, ACTING UNITED STATES ATTORNEY; MICHELLE L. WASSERMAN, ASSISTANT UNITED STATES ATTORNEY; AND ALEXANDRA PLATAS, UNITED STATES PROBATION OFFICER

Defendant, Bruce Baker, by and through counsel, Thomas J. Warwick, Jr., hereby submits the following memorandum in aid of sentencing.

## I.

## INTRODUCTION

Sentencing judges "exercise a wide discretion" in the types of evidence that they may consider when determining a sentence. *Williams v. New York*, 337 U.S. 241, 246-47 (1949).

Congress codified this principle at 18 U.S.C. § 3661, which provides that "[n]o limitation shall be placed on the information" a sentencing court may consider "concerning the [defendant's] background,

1  character, and conduct," and at § 3553(a), which sets forth certain
2  factors that sentencing courts must consider, including "the history and characteristics of the defendant," § 3553(a)(1).

3  *Pepper v. United States*, 131 S.Ct. 1229, 1235 (2011).  In *Pepper*, the Court went
4  on to state that:

5  Permitting sentencing courts to consider the widest possible breadth of information about a defendant "ensures that the punishment will
6  suit not merely the offense but the individual defendant."

7  *Id*. at 1240, *citing Wasman v. United States*, 468 U.S. 559, 564 (1984).

8  Appearing before this Court is Bruce Baker ("Dr. Baker"), who faces
9  sentencing based on his negotiated guilty plea to one count of Conspiracy to
10  Defraud the United States and File False Tax Returns, in violation of Title 18
11  U.S.C. § 371.

12  Dr. Baker is a 75 year-old man who has never before been convicted of any
13  offense.  He is a family man.  Dr. Baker has been married to his wife, Soghra
14  Bromandi since 1974.  They have two children, Roozbeh (40 years-old) and Ryan
15  (34 years-old).  Roozbeh is an attorney who holds a Ph.D in political science.
16  Ryan is a pediatric dentist.  Dr. Baker is very close with his two sons.

17  The information about Dr. Baker's parents, siblings, and upbringing are
18  accurately reflected in the Presentence Report ("PSR").  In March of 1979, Dr.
19  Baker left Iran to come to the United States.  He lived in Boston, Massachusetts
20  for 2.5 years while completing a pediatric program at Boston University.
21  Dr. Baker obtained his Doctor of Dental Medicine and finished his post graduate
22  program in May of 1981.  Thereafter, Dr. Baker moved to Florida for one year.
23  While in Florida, Dr. Baker obtained his dentistry license.

24  In 1982, Dr. Baker moved to San Diego County, California.  He passed his
25  board certification in California in 1984 and obtained his license to practice
26  dentistry in California.  That same year, Dr. Baker opened up a dentistry practice
27  in Poway, California.  His work history is accurately reflected in the PSR.
28  Dr. Baker is now retired.

Dr. Baker is known as a kind, gentle, and generous man to his colleagues. They write about him in letters to this Court, which have been attached as Exhibit "A", and state, in pertinent part, as follows:

. . . I have known Dr. Bruce Baker and his family for 19 years, professionally and personally.  [¶.]  . . . He saw potential in me, trusted his instincts and hired me. . . He had me learn all aspects of a dental practice and the different duties that each entails. Unbeknownst to me at that time, Dr. Baker was preparing me to become a strong all around Dental Assistant and Office Manager. . . His practice has become my launching pad in my current profession. . . . A significant part of my success is attributed to Dr. Baker's unyielding belief in me.  I have stayed with Dr. Baker and his practice for ten years.  Dr. Baker has not only been a boss to me but has become a father to me and I consider myself a part of his family. . .  Up to now, Dr. Baker is one of the people I go to when I feel lost or if I feel uncertain.  His words and wisdom are one of the few I seek before I execute a major decision.
    April Whitfield

. . . I have known Dr. Baker for thirteen years after I was hired in 2007 for a dental assisting position.  I have always held Dr. Baker in the highest regard.  He inspired and guided me to further my dental career and eventually pushed me to attend dental hygiene school. . . Dr. Baker has been a loyal employer to me as well as a mentor throughout the last thirteen years.  He has an ideal blend of efficiency and compassion when it comes to his work that I truly admire. . .
    Brooke Milholland

. . . I have worked alongside Dr. Bruce Baker for 8 strong years, and he has always been the type of man to teach and to guide. . .  Dr. Baker is a genuine trustworthy person with the best intentions for everyone around him, very caring.  Overall, I consider Dr. Baker to be a smart motivated man and anyone that can learn from his knowledge would be extremely fortunate.
    Lisa Robles

I have worked for Dr. Bruce Baker for 5 years out of my 15 yr of dental experience.  I only have wonderful things to say about him.  He is the most inspiring Dentist that I have ever worked for. . . His patients love him. . . He truly cares for his patients.  I've never worked with such a great person who takes the health of his patients over the mighty dollar.  [¶.]  . . . He is a truly wonderful person inside and out.
    Kelly Tomlinson

I am the former Associate Dean for Global Oral Health and assistant professor at A.T. Still University (ATSU), Arizona School of Dentistry & Oral Health (ASDOH).  Dr. Baker has been a close friend of mine for some time now.  Over the years that I have known him, he has been a community-minded individual who regularly puts the needs of others before his own.  He has always been an upright character in the community and our friendship.  [¶.]  I was particularly dismayed to hear of Dr. Baker's transgression.  I have spoken to him

1   in regards to the events in question.  I can honestly say that he is truly
    disappointed with himself and that all this is a source of intense regret
2   and embarrassment for him. . . [H]is actions in the past have
    convinced me that he is a selfless and generous man.  He has never
3   been before the courts previously and, I believe, he will never be
    before them again. . .
4           Dr. Tony Hashemian

5           Dr. Baker is a very giving individual.  Over the years, he has volunteered

6   his dental services all over this country and abroad in the Dominican Republic.

7   On many occasions, he treated children for free or at a deeply discounted rate.

8   (See Letter of Karin and Jaime Camacho, and Letter of Jenn Preske, at Exhibit

9   "B".)  Dr. Baker has also donated substantial sums of money to various charities.

10  (See Letter of Susan Shahidi, Director of Public Relations, International Society

11  for Children with Cancer, at Exhibit "C".)  Dr. Baker believes in giving back to his

12  community.  An example of his generosity is set forth in a letter to this Court by

13  Maryam Eslami Rezaei attached hereto as Exhibit "D", which letter states, in

14  pertinent part:

15          I am a real estate broker in Los Angeles and have had the pleasure of
            knowing Dr. Bruce Baker for three years through working for him
16          and his partner on a purchase/renovation of an apartment building
            here in Los Angeles. . . The building had to be empty for renovations
17          to take place. . . [A tenant was] willing to leave for a cash payment,
            but disputed the amount she felt that she should be paid.  According
18          to California law governing the matter, this tenant was entitled to
            $25,000.00 . . . The tenant however claimed that . . . she was entitled
19          to a payment of $50,000.00.  Dr. Baker (and his partner) offered the
            tenant $35,000.00 . . . [¶.]  We went to court and the judge found that
20          the tenant was entitled to the original $25,000.000 we had offered
            her.  This is where I believe Dr. Baker's generosity really shines
21          through. . . The tenant stated that she needed the extra $10,000.00 for
            her daughter's education.  To my astonishment, upon conveying the
22          tenant's request to Dr. Baker, he immediately agreed to pay the tenant
            the extra $10,000.00.  Dr. Baker told me that he [sic] as he himself
23          had benefitted immensely from the opportunities education had
            afforded to his life, he was happy to help someone else achieve those
24          opportunities. . . I feel that this speaks volumes to Dr. Baker's good
            character and I am happy to attest as such.
25          Maryam Eslami Rezaei

26          Finally, it should be noted that Dr. Baker suffers from severe health

27  problems.  As stated in the PSR:

28  / / /

                                        4                        20CR1912-BAS

1
2
3
4

> In 2008, the defendant was diagnosed with leukemia.  His physician provided him a life expectancy of 10 to 15 years.  BAKER disavowed being on medications; however, he follows an "unnatural (Vegan) diet that requires constant care at Morris Center."  The defendant added he has a low white blood cell count; he noted he would provide medical documentation in support of his diagnosis. . .

5
6

> BAKER reported he suffers from an enlarged prostate.  He takes *Flomax* and *Proscar* to treat his condition.  Moreover, he takes herbs and other "natural meds" (unspecified) to aid with his medical condition.

7
8

> U.S. Pretrial Services records reveal the defendant suffers from chronic lymphatic leukemia.

9   (See PSR, p. 14, paras. 70-72.)  In a letter attached hereto as Exhibit "E", Dr.

10  Thomas J. Kipps describes Dr. Baker's medical condition as follows:

11
12
13

> Dr. Bruce Baker has been a patient of mine since 2008, followed at the UCSD Moores Cancer Center for a diagnosis of T-cell large granular lymphocytic (LGL) leukemia. [¶.]  He was evaluated by me today.  He remains immunocompromised and neutropenic with an absolute neutrophil count of 0.8 1000/mm3.  He is at increased risk of complications from infection and should avoid possible exposure.

14
15      Unfortunately, Dr. Baker has exhausted all treatments available to him in

16  the United States for his leukemia.  After sentencing, Dr. Baker would like to

17  petition this Court to go to Switzerland to obtain treatments that have not yet

18  approved in the United States in an effort to prolong his life.

19      For Dr. Baker, this has been a humbling experience.  He understands that he

20  made an enormous error in judgment.  This incident has impacted Dr. Baker and

21  his family greatly.  Dr. Baker is deeply remorseful for his actions. "During his

22  presentence interview, BAKER accepted responsibility for his actions."  (PSR, p.

23  24, para. 127.)  According to the PSR, Dr. Baker "said, 'I made a big mistake.  I

24  take full responsibility.'" (PSR, p. 11, para. 41.)  Moreover, in a letter to this Court

25  attached hereto as Exhibit "F", Dr. Baker writes, in pertinent part, as follows:

26
27
28

> I wish to express directly to you how very sorry I am for the crimes that I have plead guilty to. . . [¶.]  Please understand that I am not trying to make excuses for myself or my actions.  I broke the law freely and with full knowledge.  What I am trying to say is that because Rabbi Goldstein was involved I was able, due to his involvement and the regard I held for him, [to] justify my illegal

20CR1912-BAS

actions to myself. [¶.]  I am now in the twilight of my life.  I am 74 years old and have CLL (a type of Leukemia).  I have destroyed the reputation I built after 35 years of working in San Diego and Riverside, serving the community as a dentist, and helping children and families. . .  Perhaps with enough time I could gain some of this reputation back, but as a 74 year old man with Leukemia I, unfortunately, do not have that kind of time.  This is what hurts me the most, the fact that I do not have enough time to try and regain some of the reputation that my stupid and illegal actions have destroyed. [¶.]  Judge Bashant, I wish to humbly petition you to allow me (if you feel that it is warranted) to serve some or any part of my sentence/punishment through volunteer work as a dentist (i.e. treating patients for no charge).  As I stated above, due to my age and medical condition, I do not know how much time I have left on this earth to try and make up for my illegal actions, but I would [be] so grateful for a chance to try.  Before my guilty plea and this unfortunate series of events brought on by my own stupidity and illegal actions, I was in the process of joining the U.C. San Diego student-run free dental clinic in Lemon Grove.  The opportunity to give back to my community through to [sic] treating low-income patients for free at the U.C. San Diego Clinic would be one that I would be most grateful for.

In letters to this Court attached hereto as Exhibit "G", Dr. Baker's loved ones talk about his overall character as follows:

. . . I'm a cousin of Dr. Bruce Baker. . . [¶.]  I've known Dr. Baker for more than 40 years.  In the past 14-16 years, we've become very close.  Outside of the immediate family (wife and 2 children), I would say that I probably know him better than anyone else! . . . [¶.]  I'd like to share with you who Dr. Baker really is and the impact he has made on other people's lives. . . In early 2017, my oldest brother (David) was diagnosed with pancreatic cancer . . . Dr. Baker was among the few who stood behind David and supported him unconditionally (emotionally, spiritually, financially). . . [¶.] . . . [D]eep down, he is a philanthropist who gets great joy by helping others. . .[¶.]  From early 2017 to July/2019, I not only lost my brother in early 2017, but also lost my father and mother on June 8, 2019 and July 7, 2018, respectively.  This two-year span was the most difficult period of my life . . . [T]here was only one person (besides my sister) in my life that supported me unconditionally - Dr. Baker! . . . [W]hat I'm most grateful in having Dr. Baker in my life for is all the mentoring and advice he has shared with me to help me become a[n] even better person! - examples: more giving, caring for others, giving to others is better than receiving from others, etc. [¶.] . . . Dr. Baker has become not only my brother but now like my father. . . I can't tell you how much he has meant to me and how positive and impactful he has been. . . [¶.] . . . He is kind, caring, compassionate, and giving beyond limits.
    Edmond Banayan

. . . I have known and been associated with Dr. Baker for over 30 years.  He has been by far more than a casual friend to me, since we have had numerous financial and family interactions in the past 30

years.  I attest with no hesitation that I consider Dr. Bruce Baker a trustworthy, noble and caring person that I have ever known. . . . He is known to be a great benefactor in our community.
> Bruce Sahba

I am honored to write a reference letter for my friend Dr. Baker whom I have known for the past 25 years. . . [I]n the 30 plus years of professional activities, there is no other person whom I feel demonstrates an abundance of positive qualities professionally and personally. . . [¶.]  As a friend, Dr. Baker is a standout.  He is loyal, considerate, and has always demonstrated the uncanny ability to truly understand things from the other person's perspective. . . [¶.]  Above all, what I admire the most in Dr. Baker is that he is a good human being.  Dr. Baker's charitable and motivational nature is not solely reserved for friends and family, but to complete strangers as well. . .
> Sep Yahmaee

I recently became aware of the situation that Dr. Baker has placed himself in.  I have known him and his family for over a decade and found them to be honorable, respectable and community minded. [¶.] . . . I served as the Inaugural Dean [of the Arizona Department of Health Services] for fifteen years and it was in that capacity that I first met Dr. Baker.  I found him to be a man of integrity, committed to his community and generous in his efforts to help others.  [¶.]  I believe that he has acknowledged his bad behavior and is committed to making it right.  I also believe that in his core he is a man of honor and has learned from his error and will make it right!
> Jack Dillenberg

## II.

## THE SENTENCING GUIDELINES

**A.**   **Adjusted Offense Level**

The parties have agreed on the following calculations under the United States Sentencing Guidelines:

| | | |
|---|---|---|
| Base Offense Level | 20 | [§ 2T1.1(a)(1), § 2T4.1(H)] |
| Sophisticated Means | +2 | [§ 2T1.1(b)(2)] |
| Acceptance of Responsibility | -3 | [§ 3E1.1] |
| Adjusted Offense Level: | 19 | |

Dr. Baker has zero Criminal History Points, therefore resulting in a Criminal History Category I.  The initial sentencing range is 30 to 37 months.

/ / /

/ / /

**B.     Downward Adjustments**

We have been advised by the government that they will be requesting the following variances at sentencing:

A three level variance is warranted pursuant to U.S.S.G. § 5K1.1.

A two level variance is warranted pursuant to Dr. Baker's health condition and other equities.

Dr. Baker would respectfully request that this Court order the above downward departures, as well as additional downward departures as follows:

A five level downward departure based on a combination of factors pursuant to U.S.S.G. § 5K2.0 and United States v. Cook.

A three level downward departure based on the aberrant nature of his conduct pursuant to U.S.S.G. § 5K2.20.

| | |
|---|---|
| Adjusted Offense Level | 19 |
| U.S.S.G. § 5K1.1 Variance | -3 |
| U.S.S.G. § 5H1.4 and Other Equities | -2 |
| U.S.S.G. § 5K2.0 and Cook Departure | -5 |
| U.S.S.G. § 5K2.20 Departure | -3 |
| Total Adjusted Offense Level | 6 |

Therefore the resultant adjusted offense level is six, with a Criminal History Category of I.  The sentencing range would be zero to six months.

### III.

### STATUTORY SENTENCING FACTORS IN 18 U.S.C. § 3553(a)

With regard to the Sentencing Guidelines, the United States Supreme Court has stated:

> Our post-*Booker* opinions make clear that, although a sentencing court must "give respectful consideration to the Guidelines, *Booker* permits the court to tailor the sentence in light of other statutory concerns as well." [Citation omitted.]  Accordingly, although the "Guidelines should be the starting point and the initial benchmark," district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in § 3553(a), subject to appellate review for "reasonableness."

1  *Pepper*, 131 S.Ct. at 1241, *citing Kimbrough v. United States*, 552 U.S. 85, 101

2  (2007) and *Gall v. United States*, 552 U.S. 38, 49-51 (2007).  In determining a

3  sentence, the Court is required to honor the parsimony clause,

4  18 U.S.C. § 3553(a), which provides that the Court shall impose a sentence

5  sufficient, but not greater than necessary, to comply with the sentencing factors

6  cited in that section.  These factors include, *inter alia,* the history and

7  characteristics of the defendant, the seriousness of the offense, the need for

8  individual and general deterrence, the kinds of sentences available, and the need to

9  avoid unwarranted sentencing disparity.

10  **A.**   **The Nature and Circumstances of the Offense**.

11      The nature of the offense is accurately described in the PSR.  Although the

12  overall conspiracy took place over several years, "it appears Y. Goldstein was the

13  mastermind behind this deceitful conspiracy."  (PSR, p. 21, para. 120.)  This Court

14  must remember that "the punishment should fit the offender and not merely the

15  crime."  *Williams*, 337 U.S. at 247.  Therefore, this Court must also look at the

16  history and characteristics of Dr. Baker.

17  **B.**   **The History and Characteristics of the Defendant**.

18      Dr. Baker's history and characteristics are accurately described above.  He

19  is highly educated, is a very hard worker, and has an extremely close relationship

20  with his family.  Dr. Baker has always been a productive member of society.  He

21  has either gone to school or been employed since he was young.

22      Dr. Baker is loved and respected by many, as can be seen by the character

23  letters attached hereto.  The characteristics described in those letters, and as set

24  forth above, are all favorable and mitigating.  He has no criminal record, no

25  history of violence, and no history of anti-social behavior.  Dr. Baker comes from

26  a good family and was extremely well-regarded in his community until the instant

27  offense.

28  / / /

### 3.    The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, to Protect the Public, and to Provide for the Defendant's Needs in the Most Effective Manner.

In *Pepper v. United States*, 131 S.Ct. at 1242-43 (2011), the Court opined that:

> Pepper's postsentecing conduct also sheds light on the likelihood that he will engage in future criminal conduct, a central factor that district courts must assess when imposing sentence.  See §§ 3553(a)(2)(B)-©; *Gall*, 552 U.S., at 59, 128 S.Ct. 586 ("Gall's self-motivated rehabilitation . . . lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts" (citing §§ 3553(a)(2)(B)-©). . . Accordingly, evidence of Pepper's postsentencing rehabilitation bears directly on the District Court's overarching duty to "impose a sentence sufficient, but not greater than necessary" to serve the purposes of sentencing.
> § 3553(a).

The fact that Dr. Baker is 75 years-old, has no criminal record, has been diagnosed with leukemia and is not expected to live much longer, has paid restitution in full, and has had no pretrial violations, sheds light on the minimal likelihood that he will engage in future criminal conduct.  In fact, the Probation Officer states in the PSR that: "Also, while his actions herein may post a third-party risk for future employers, it does not appear BAKER is a danger to the community."  (PSR, p. 23, para. 122.)  Neither the fact of his offense conduct, nor any past event or characteristic, indicates any future threat of public danger posed by Dr. Baker.

Additionally, for many of the reasons cited above, there is little need for further punishment to promote respect for the law, to deter Dr. Baker, or to afford adequate punishment.  In evaluating Dr. Baker's real offense conduct, a sentence of probation with community service would be appropriate.  When asked about his release plans, Dr. Baker indicated that "he will 'provide free dental services to the poor and provide professional help and training for potential dentist who are

/ / /

1  pursuing a career.'"  (PSR, p. 24, para. 128.)  "Baker noted the services he

2  provides would be 'volunteer work.'" (PSR, p. 14, para. 67.)

3      The impact that this case has had on Dr. Baker, and his loved ones, cannot

4  be overstated.  He sold his dental practice to pay off his restitution.  Moreover, the

5  anxiety he has felt about this case, and the conviction that will now be on his

6  record, has provided more than enough deterrence for Dr. Baker to ever become

7  involved in criminality again.  This case has been highly publicized and his name

8  has been tarnished.

9      It is important to note that the "government will recommend that the

10  defendant be sentenced to the low end of the advisory guideline range as

11  calculated by the government, pursuant to this agreement." (PSR, p. 21, para.

12  112.)  Moreover, the Probation Officer states, in the PSR, that "a sentence below

13  the advisory guideline range appears sufficient, but not greater than necessary, to

14  address the statutory factors in sentencing pursuant to 18 U.S.C. § 3553(a)."

15  (PSR, p. 23, para. 123.)  The Probation Officer further states:

16      The undersigned believes that BAKER realizes the gravity of his
        mistake however, just punishment and general deterrence can be
17      achieved by an alternative non-custodial sentence.  As such, this
        probation officer believes that a five-year probationary term with six
18      months home detention is sufficient, but not greater than necessary, to
        meet sentencing objectives.  Based on his financial profile, a fine is
19      also recommended.  It is also recommended BAKER'S sentence
        include a condition that he perform 100 hours of volunteer service at
20      a non-profit organization, approved by the U.S. Probation Office.

21  (PSR, p. 24, para. 130.)  We agree with the Probation Officer's recommendation in

22  this case that a term of five years probation with six months of home confinement

23  and 100 hours of volunteer service would be sufficient, but not greater than

24  necessary, to meet sentencing objectives.  In addition, Dr. Baker respectfully

25  requests that no fine be imposed.  It is our understanding that the government will

26  not be recommending a fine in this case due to the significant amount of

27  restitution already paid and still owed.

28  / / /

**4.      The Kind of Sentences Available**.

As the Court in *Pepper* stated, "district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in § 3553(a), subject to appellate review for 'reasonableness.'" *Pepper*, 131 S.Ct. at 1241.  Here, the guideline range is 30 to 37 months; however, the "defendant is eligible for not less than one nor more than five years' probation because the offense is a Class D. Felony.  18 U.S.C. § 3561(c)(1).  One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service." (PSR, p. 21, para. 105.)  Consequently, this Court may impose a sentence of probation with home confinement and volunteer service.

**5.      The Kind of Sentencing Range Established by the Guidelines**.

As stated above, according to the government, the guideline range in this case is 15-21 months; however, if this Court grants the downward departures requested by Dr. Baker, the guideline range in this case is zero to six months.

**6.      Any Pertinent Policy Statement**.

See Subparagraph 4 above.

**7.      The Need to Avoid Unwarranted Sentence Disparity Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**.

As noted above, Dr. Baker has no prior criminal record.  The sentences of similarly situated defendants is set forth on page 2 of the PSR and reflects sentences of (a) one year of probation, (b) three months custody with two years of supervised release, and © two years of probation.  Consequently, a sentence of probation would be appropriate in this case.

**8.      The Need to Provide Restitution to Any Victim**.

Dr. Baker has paid a significant amount of restitution in this case.  In fact, prior to Dr. Baker even getting charged, he amended his tax returns for years 2010 to 2017 and paid back taxes.  (PSR, p. 9, para. 30.)  According to the government,

1 | the total amount of taxes, penalties, and interest owed by Dr. Baker was
2 | $1,380,628.98.  Dr. Baker has already paid $805,901.00 toward that amount.  As
3 | such, the total amount of unpaid taxes, penalties, and interest still owing is
4 | $574,727.98.

**IV.**

**CONCLUSION**

Dr. Baker has retired from dentistry and hopes to do volunteer service for the remaining years of his life.  Although he is not expected to live much longer given his leukemia diagnosis, he could help a lot of people in need in the time that he does have remaining on this earth.  Given the above, Dr. Baker respectfully requests that this Court sentence him to five years of probation with six months home confinement and 100 hours of volunteer service.  He also respectfully requests that no fine be imposed.

Dated:  May 28, 2021

Respectfully Submitted,

/s/ Thomas J. Warwick, Jr.
Thomas J. Warwick, Jr.
Attorney for Bruce Baker